UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERNESTO KARAM GARCIA, MIGUEL ANGEL LEYVA URQUIA, SALVADOR RIO DE LA LOZA POSTIGO, COMERCIALIZADORA Y CONSTRUCTORA MIGSAL, S.A. DE C.V., ECON DESARROLLADOR INMOBILIARIO, S.A. DE C.V., and DESARROLLADORA DE ILUSIONES, S.A. DE C.V., <br><br>Plaintiffs,<br><br>vs.<br><br>LION MEXICO CONSOLIDATED, L.P., CLARION PARTNERS, LLC, JAMES CHRISTIAN HENDRICKS, RONALD SCOTT BROWN, and ONAY SAFIYA PATRICE PAYNE,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § | No. 5:15–CV–1116–DAE |

ORDER: (1) GRANTING MOTION TO STAY DISCOVERY; (2) GRANTING MOTION TO STAY ENTRY OF SCHEDULING ORDER

    Before the Court is a Motion to Stay Discovery pending resolution of the Motion to Dismiss, filed by Defendants Lion Mexico Consolidated, L.P. ("Lion"), Clarion Partners, LLC ("Clarion"), James Christian Hendricks, Ronald Scott Brown, and Onay Safiya Patrice Payne (collectively, "Defendants"). (Dkt. # 24.) Plaintiffs Ernesto Karam Garcia, Miguel Angel Leyva Urquia, Salvador Rio de la Loza Postigo, Commercalizadora y Constructadora Misgal, S.A. de C.V.

1

("Misgal"), Econ Desarrollador Inmobiliario, S.A. de C.V. ("Econ"), and Desarrolladora de Ilusiones, S.A. de C.V. ("Ilusiones") (collectively, "Plaintiffs") timely filed a Response on (Dkt. # 25), and Defendants filed a Reply (Dkt. # 27). Pursuant to Local Rule 7(h), the Court finds the matter suitable for disposition without a hearing.  For the reasons that follow, the Court **GRANTS** Defendants' Motion to Stay Discovery, and **GRANTS** Defendants' Motion to Stay Entry of Scheduling Order.  (Dkt. # 24.)

## BACKGROUND

Plaintiffs Garcia, Urquia, and Postigo (the "Palmetto Investors") are individuals and citizens of Mexico, each of whom resides in the United States. ("Am. Compl.," Dkt. # 14 ¶¶ 24–26, 88–89).  Plaintiffs Misgal, Econ, and Ilusiones are Mexican corporations located in Mexico City, Mexico.  (Id. ¶¶ 27–29.)  The Palmetto investors created Econ to develop the "Punta Mar" real estate project in Acapulco, Mexico.  (Id. ¶¶ 56–7.)  Misgal and Ilusiones were created to serve as beneficiaries to the land trust for Punta Mar.  (Id. ¶¶ 90–91.)

On December 14, 2015, Plaintiffs filed suit against Clarion, a real estate investment management firm, and Lion, a Clarion investment vehicle dedicated to real estate opportunities located in Mexico; each maintains a place of business in Dallas, Texas.  (Id. ¶¶ 30–33, 41–57.)  Plaintiffs also named as Defendants Hendricks and Payne, who are equity owners and leaders of Clarion,

2

and Brown, a Clarion employee allegedly intimately involved with the actions of Clarion and Lion.  (Id. ¶¶ 34–36; 58–87.)

Plaintiffs allege that they, along with approximately ten other investors, began plans for the Punta Mar project in 2005.  (Am. Compl. ¶¶ 140–57.)  Clarion became an equity investor in the Punta Mar project in 2007, but allegedly induced the Palmetto investors to sign documents disguising the investment as a loan; for at least two years, Clarion took actions consistent with status as an equity investor, including transferring assets to Lion to avoid Mexican taxes.  (Id. ¶¶ 158–81.)  Plaintiffs allege that in 2009, Lion began ousting them from the management of MIFEL, the Mexican operating trust responsible for development of the Punta Mar Project, and by extension, the Punta Mar development.  (Id. ¶¶ 182–91.)  Specifically, Plaintiffs allege that Lion accelerated the 2007 loan Plaintiffs believed to be an equity investment, and purchased a separate loan Plaintiffs obtained for the Punta Mar development before Clarion's entry to the project.  (Id. ¶¶ 183–189.)  Plaintiffs allege that Lion subsequently unlawfully foreclosed on approximately 70 condominium units in Punta Mar and transferred ownership of said condominiums to the Bank of New York Mellon.  (Am. Compl. ¶¶ 38, 95–102.)

Plaintiffs allege that Defendants took part in various unlawful acts after assuming management of MIFEL.  Plaintiffs state that Clarion

3

secretly transferred title of a luxury Punta Mar penthouse to Murillo Karam,[1] though Mr. Karam had only paid 25% of the purchase price of the penthouse. (Am. Compl. ¶ 104, 114.)  Plaintiffs also allege an attorney for Clarion and Lion filed a criminal complaint against the Palmetto investors, alleging they defrauded Clarion of millions of dollars; according to Plaintiffs, Clarion and Lion bribed a judge in Mexico City to issue an arrest warrant.  (Id. ¶¶ 104–5, 111, 118–22.)  Thereafter, Plaintiffs allege Mr. Karam met with an attaché from the United States Immigration and Customs Enforcement agency ("ICE") to request that the Palmetto investors be extradited from the United States to Mexico on the basis of this arrest warrant, prioritizing the matter due to the transfer of the luxury penthouse in Punta Mar.  (Id. ¶¶ 104–6, 114.)

As a result of these alleged acts, Urquia was extradited by ICE from Vancouver to Mexico City on October 4, 2012, where Mexican authorities transported him to jail.  (Am. Compl. ¶ 117.)  Postigo and his wife were allegedly detained by ICE in Miami on July 20, 2013, and released the following day. (Id. ¶¶ 124–25.)  Garcia was allegedly apprehended by ICE in San Antonio on August 21, 2013, and extradited to Mexico City, where he was imprisoned for over two years.  (Id. ¶¶ 126–28.)  Plaintiffs allege that certain family members of the Palmetto Investors—particularly Postigo's father and wife—were frequently

---

[1] Mr. Karam was the Attorney General of Mexico from 2012–2015.

questioned by ICE at the San Antonio airport, and that Postigo's wife was brought into ICE custody on at least two occasions before an Immigration Judge determined she held a valid visa.  (Id. ¶¶ 130–35.)

On December 14, 2015, Plaintiffs brought suit against Defendants. (Dkt. # 1.)  Their Amended Complaint alleges: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., specifically that Defendants acquired control of MIFEL and Punta Mar by means of bribery, extortion, obstruction of justice, and mail and wire fraud (Am. Compl. ¶¶ 192–206); (2) conduct of affairs in violation of 18 U.S.C. § 1962(c) (id. ¶¶ 207–23); (3) conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d) (id. ¶¶ 224–30); (4) fraud, specifically fraudulent misrepresentations and omissions made with the intention of maintaining an unlawful interest in and control of MIFEL and Punta Mar (id. ¶¶ 231–38); (5) tortious interference with the contracts existing between MIFEL, Plaintiffs, and various purchasers of condominium units in Punta Mar (id. ¶¶ 239–44); (6) malicious prosecution of Garcia, Urquia, and Postigo (id. ¶¶ 245–49); (7) unjust enrichment and conversion in relation to Punta Mar (id. ¶¶ 250–253); and (8) civil conspiracy to obtain Plaintiffs' interests in MIFEL and Punta Mar, in violation of Texas law (id. ¶¶ 254–59).

On July 11, 2016, Defendants filed a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  (Dkt. # 20.)  This Court

granted Plaintiffs an extension of time to file a Response, and their new deadline is August 15, 2016. (Dkt. # 23, text order.) The motion is scheduled for a hearing on October 20, 2016. (Dkt. # 22.) On July 19, 2016, Defendants filed the instant motion for a protective order to stay discovery pending the Court's ruling on the Motion to Dismiss. (Dkt. # 24.) Plaintiffs filed a Response (Dkt. # 25), and Defendants filed a reply (Dkt. # 27).

## DISCUSSION

"A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987); see also Soveran Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). A district court properly exercises its discretion to stay discovery upon a showing of good cause. Fed. R. Civ. P. 26(c). Good cause exists when the party from whom discovery is sought shows that it would suffer "annoyance, embarrassment, oppression or undue burden or expense" absent a stay. Id.; see Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 436 (5th Cir. 1990).

"However, 'the issuance of a stay is by no means automatic.'" U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am., 571 F. Supp. 2d 766 (W.D. Tex. Aug. 14, 2008) (quoting Spencer Trask Software & Info. Servs. v. RPost Int'l, 206 F.R.D. 367, 368 (S.D.N.Y. 2002)). "In fact, such a stay is the exception rather than

the rule[;] . . . '[if] the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.'" Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc., No. 3–09–CV–0774, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008) (quoting Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990)).  Accordingly, a district court considering such a motion "must balance the harm produced by the delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." Feldman v. Flood, 176 F.R.D. 651, 652 (M.D. Fla. 1997)

Defendants claim that permitting discovery to proceed prior to the resolution of the Motion to Dismiss would be costly and burdensome, as Plaintiffs' claims focus on activity and individuals in Mexico, and discovery requests are likely to target documents and witnesses in Mexico. (Dkt. # 24 at 5.) The Court agrees with Defendants' contention.

Plaintiffs' response focuses on the alleged need to discover additional facts to contradict factual assertions in Defendants' Motion to Dismiss. (Dkt. # 25 ¶¶ 21–24.)  This concern is unfounded; under the motion to dismiss standard, the Court determines whether, accepting as true all facts pled by Plaintiff, the complaint sufficiently states a legal claim upon which relief can be granted.  See Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir. 1996) (treating

7

"a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim," and reviewing the motion under the 12(b)(6) standard).  To weigh the Plaintiffs' version of the facts against Defendants' at the Motion to Dismiss stage would convert the Motion to Dismiss into a motion for summary judgment, which the Court declines to do at this time.  See Exxon Corp. v. Maryland Cas. Co., 599 F.2d 659, 661 (5th Cir. 1979).

Additionally, without commenting on the merits of the case, the Court notes that the Amended Complaint is a sprawling document alleging a litany of claims and weighing in at over seventy pages.  Using the Amended Complaint as the basis for launching international discovery, without first considering whether the claims should be narrowed, could result in discovery abuse.  This is particularly true in this case, because this Court has not yet considered the effect of the Supreme Court's recent ruling in RJR Nabisco, Inc. v. European Cmty., on Plaintiffs' RICO claims.  136 S. Ct. 2090, 2106–2111 (2016) (finding that RICO does not provide a private right of action for injuries suffered outside the United States); see 18 U.S.C. § 1964(c).  Second, Plaintiffs' Amended Complaint alleges fraud and RICO claims that hinge upon fraud; discovery should not proceed on fraud claims until those claims have survived a motion to dismiss.  See Williams v. WMX Tech., Inc., 112 F.3d 175, 178 (5th Cir. 1997) ("[T]he requirement for particularity in pleading fraud does not lend itself to refinement . . . the who, what,

when, and where must be laid out <u>before</u> access to the discovery process is granted."). Third, Plaintiffs have not alleged that information may be lost or otherwise become undiscoverable if discovery is stayed pending the resolution of the Motion to Dismiss. Finally, no scheduling order has been entered in the case; any prejudice Plaintiffs may experience as a result of a delay in discovery will be mitigated by the entry of a scheduling order which allows adequate time for discovery before the dispositive motions deadline.

When balancing the harm produced by the imposition of a temporary stay, which would be mitigated by an appropriate scheduling order, against the possible harm—particularly costs—that could result from authorizing discovery to proceed on a litany of claims that may be dismissed or refined, the Court finds that Plaintiffs will not be harmed by the imposition of a temporary stay of discovery. Accordingly, this case presents a rare scenario in which a discovery stay, pending the outcome of the motion to dismiss, is relatively equitable to the parties. Accordingly, Defendants' Motion to Stay Discovery and Motion to Stay Entry of a Scheduling Order is **GRANTED** (Dkt. # 24.)

## CONCLUSION

For the reasons stated above, Defendants' Motion to Stay Discovery is **GRANTED** (Dkt. # 24). All discovery is **STAYED** pending this Court's decision on the Motion to Dismiss, which will be issued shortly after the hearing scheduled

for October 20, 2016.  The stay will be automatically lifted at the time this Court issues its order on the Motion to Dismiss.

Further, Defendants' Motion to Stay Entry of a Scheduling Order is **GRANTED** (Dkt. # 24.)  The Joint Scheduling Recommendations filed by the parties on July 22, 2016 (Dkt. # 26) are hereby **STRUCK** from the record.  The parties are **ORDERED** to submit joint scheduling recommendations to the Court within seven days after the issuance of the Court's order on the Motion to Dismiss.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 29, 2016.

_____
David Alan Ezra
Senior United States Distict Judge